## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**BRUNO BALASSIANO, on behalf of himself
and those similarly situated,**

      **CASE NO.: 6:19-CV-2140-ORL-78EJK**

    **Plaintiff,**

**v.**

**FOGO DE CHAO CHURRASCARIA
(ORLANDO) LLC, FOGO DE CHAO
CHURRASCARIA (JACKSONVILLE)
LLC and FOGO DE CHAO
CHURRASCARIA (MIAMI) LLC.**

    **Defendants.**

_____/

## PLAINTIFF'S MOTION TO CERTIFY CLASS AS TO MINIMUM WAGE CLAIMS PURSUANT TO RULE 23(B)(3) & MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION PURSUANT TO 29 U.S.C. §216(B)

Plaintiff, BRUNO BALASSIANO, hereby moves this Court for an Order certifying that the minimum wage claims may be maintained as a class action under Fed. R. Civ. P. 23 and to permit court-supervised notice of employees to their opt-in rights pursuant to the FLSA, under 29 U.S.C. §216(b), and in support thereof state as follows:

This lawsuit seeks compensatory damages in the amount to which Plaintiff and the class members are entitled because of Defendants' improper taking of the tip credit and underpayment and/or refusal to pay minimum wages under Federal and Florida law.  The lawsuit also seeks liquidated damages, interest, and attorneys' fees and costs.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff requests that this Court certify the following class:

> **All servers, bartenders, and carvers who worked for Defendants within Florida during the five (5) years preceding this lawsuit who were not paid full**

**and proper minimum wage as a result of Defendants' illegal tip pooling practices.**

Plaintiff also seek conditional certification of a collective action pursuant to 29 U.S.C.

§216(b) for the following class:

**All servers, bartenders and carvers who worked for Defendants within Florida during the last three (3) years preceding this lawsuit who were not paid full and proper minimum wage as a result of Defendants' illegal tip pooling practices.**

As discussed more fully below, certification of this class is appropriate under Rule 23(b)(3)

of the Federal Rules of Civil Procedure and 29 U.S.C. §216(b).

## STATEMENT OF FACTS

This class action lawsuit involves simple facts which show an egregious violation of the

minimum wage protections in the Florida Constitution and Fair Labor Standards Act ("FLSA").

Defendants own and operate multiple "Fogo the Chao" steakhouse restaurants throughout the

nation including three in the state of Florida. *See* Defendant's website at:

https://fogodechao.com/locations/. At each of these restaurants, Defendants employ numerous

servers, bartenders and carvers who serve the customers of the restaurant.  Plaintiff and the current

opt-in Plaintiffs comprise the class of servers, bartenders and carvers. *See* Notice of Filing Consent

to Join Forms (Doc. 18, 35).

Each restaurant employs 50-100 servers, bartenders, and carvers at one time to serve the

customers. *See* Bruno Balassiano Declaration, Exhibit "A" at ¶29 (50-100 in **Orlando** location).

*See also* Decl. of Pedro Afonso, Ex. B, at ¶30 (same); Decl. of Fernando Costa, Ex. C, at ¶30

(same);  Decl. of Marcelino Medeiros, Ex. D, at ¶31 (same); Decl. of Paulo Rodrigues, Ex. E, at

¶33 (same); Decl. of Axel Torres, Ex. F, at ¶31 (50-75 in **Jacksonville** location).  Accounting for

turnover in the positions (which is high), Plaintiff estimates approximately 500 class members who were employed by Defendants in the applicable statute of limitations time period.

Each of these class members were paid by the tipped credit, worked similar hours, and performed similar job duties. *See* Balassiano Decl., Ex. "A" at ¶¶6-15, 26-28; Afonso Decl., Ex. B, at ¶¶6-15, 27-29; Costa Decl., Ex. C, at ¶¶6-16, 27-29; Medeiros Decl., Ex. D, at ¶¶6-17, 28-30; Rodrigues Decl., Ex. E, at ¶¶6-17, 30-32; Torres Decl., Ex. F, at ¶¶31, 27-29.

Throughout their employment with Defendants, Plaintiff and the putative class members were forced to improperly share tips with workers who were supposed to be carvers, but instead were used as dedicated cooks (A/K/A "back of the house") for either all or most of their work shifts. *See* Balassiano Decl., Ex. "A" at ¶¶8-11; Afonso Decl., Ex. B, at ¶¶8-11; Costa Decl., Ex. C, at ¶¶9-12; Medeiros Decl., Ex. D, at ¶¶9-13; Rodrigues Decl., Ex. E, at ¶¶12-15, 30-32; Torres Decl., Ex. F, at ¶¶8-12. Astonishingly, carvers who worked in the kitchen were still paid by the tip credit (less than minimum wage, plus tips) although they workes as kitchen workers. *Id*. In essence, Defendants paid their kitchen workers through the tips of the class members who worked in the front of the house, which is illegal. *Fonseca v. Dircksen & Talleyrand Inc.,* No. 13 Civ. 5124(AT), 2014 WL 1487279, at *2 (S.D.N.Y. Apr. 11, 2014); *see* 29 U.S.C. § 203(m); *Wicaksono v. XYZ 48 Corp.,* 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011), *report & recommendation adopted,* 2011 WL 2038973 (S.D.N.Y. May 24, 2011)

In addition, Plaintiff and the class members shared tips with an employee who worked as Customer Service Representative ("CSR") who was not a tipped employee and should not have been included in the tip pool. *See* Balassiano Decl., Ex. "A" at ¶¶16-25; Afonso Decl., Ex. B, at ¶¶17-26; Costa Decl., Ex. C, at ¶¶18-26; Medeiros Decl., Ex. D, at ¶¶19-27; Rodrigues Decl., Ex. E, at ¶¶21-29; Torres Decl., Ex. F, at ¶¶19-26. These common policies warrant certification of

3

this matter and are completely illegal.  *See* 29 U.S.C. § 203(m)(in defining the term "wage," the tip credit cannot apply unless "…all tips received by such employee have been retained by the employee…"); Dep't of Labor Fact Sheet #15: Tipped Employees under the (FLSA)[1]  (attached as Exhibit G).[2]  As a result of these violations, Plaintiff seeks to represent a class of Defendants' current and former servers who were subjected to Defendants' improper pay practices.

## PROCEDURAL BACKGROUND

Plaintiff originally filed this action in the Ninth Judicial Circuit Court for Orange County on October 31, 2018.  Plaintiff filed its Motion for Class Certification on May 28, 2019.  Plaintiff filed an amended complaint to include a count for minimum wages under the FLSA on November 5, 2019.  Defendants removed the case to this court on November 8, 2019.  This Court issued its FLSA Scheduling Order November 27, 2019 (Doc. 16) which required the parties to conduct a preliminary document exchange and attend a settlement conference. The parties did not reach a settlement and filed the Joint Report Regarding Settlement (Doc. 33) and Proposed Case Management Report (34).  The Court recently entered the Scheduling Order (Doc. 34).  Now that the parties are able resume a motion practice, Plaintiff files this motion for class certification.

## MEMORANDUM OF LAW

### I.   HYBRID ACTIONS

Plaintiff moves this Court under two bases. First, Plaintiffs seek class certification under Fed. R. Civ. P. Rule 23(a) and (b)(3) for violations of the Florida Minimum Wage Act. Second,

---

[1] Article X, Section 24(b) of the Florida Constitution holds that the definition of "wage" "shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations."  The definition of "wage" in the FLSA incorporates the tip credit provisions.

[2] At this stage of the proceedings, the Florida Supreme Court has held that trial courts should only focus on whether to certify a class, not on the merits of an action.  *Sosa v. Safeway Premium Finance Co.*, 73 So.3d 91, 105 2011) ("When determining whether to certify a class, a trial court should focus on the prerequisites for class certification and not the merits of a cause of action.")

Plaintiff seeks conditional class certification under 29 U.S.C. §216(b) for violations of the Fair Labor Standards Act. Hybrid class action suits under Rule 23 (for state law minimum wages) and 29 U.S.C. § 216(b) (for overtime) may proceed without conflict. B*ennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1276 (S.D. Fla. 2012); *See generally* Advisory Committee's Notes to Federal Rule 23(b)(3)("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended."). *See also, e.g., Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) (distinguishing opt-in procedure under FLSA and Rule 23); *Scantland v. Jeffry Knight, Inc.*, No. 8:09-CV-1985-T-17TBM, 2010 U.S. Dist. LEXIS 103151, 2010 WL 4117683, at *4 (M.D. Fla. Sept. 29, 2010) (recognizing "hybrid class actions") (citing *Lindsay v. Government Employees Insurance Co*., 448 F.3d 416, 371 U.S. App. D.C. 120 (D.C. Cir. 2006)); As such, "claims subject to certification under § 216(b) may appropriately be brought in the same lawsuit as claims subject to certification under Rule 23 where, … the essential facts and issues regarding each set of claims are likely to be the same and proceedings are not likely to be rendered unduly burdensome by inclusion of both sets of claims." *Jimenez-Orozco v. Baker Roofing Co.*, No. 5:05-CV-34-FL, 2007 U.S. Dist. LEXIS 93860, 2007 WL 4568972, at *6 (E.D.N.C. 2007)(certifying hybrid action).

In the present case, both the essential facts and legal questions forming the foundation of Plaintiff's claims under the Florida Minimum Constitution and the FLSA are identical – whether Defendants operated an unlawful tip-pool by the inclusion of employees who do not customarily and regularly receive tips. Both claims will rely upon the same witnesses and documentary proof. The only difference between the two claims are the remedies available, the statute of limitations and the administration of the class.

Further, the FLSA expressly permits more protective state labor laws. *See* 29 U.S.C. § 218(a) ("No provision of this chapter … shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter…."). This savings clause provides further evidence that a federal lawsuit combining state and federal wage and hour claims is consistent with FLSA.

## II.   CLASS CERTIFICATION AS TO MINIMUM WAGE CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(B)(3)

Plaintiff seeks class certification under Rule 23 with respect to Count I of the Amended Complaint. Plaintiffs ask the Court to certify a class consisting of:

> **All servers and carvers who worked for Defendants within Florida during the five (5) years preceding this lawsuit who were not paid full and proper minimum wage as a result of Defendant's illegal tip pooling practices.**

While the Plaintiffs bear the burden of showing that the requirements of Rule 23 have been met, "[f]or the purposes of class certification...the Court accepts the plaintiffs' substantive allegations as true." In *Re Carbon Dioxide Antitrust Litigation*, 149 F.R.D. 229, 232 (M.D. Fla. 1993. In addition, "[t]he Court resolves any doubt in favor of class certification." *Id*., at 232. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153, 40 L. Ed. 2d 732 (1974). Because Plaintiff satisfies the requirements of Rule 23(a) and the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff's Motion should be granted, and this Court should certify the proposed class.

A.   **Plaintiff Meets the Requirements of Rule 23(a)**

Under Rule 23(a) there are four prerequisites to the maintenance of a class action: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) it must appear that the representative parties will fairly and adequately protect the interests of the class ("adequate representation").   These four requirements for certification are met here.

1.   **The class is so numerous that joinder of all members is impracticable.**

The first requirement for maintaining a class action is that the class is so numerous that joinder of all members would be impracticable.  *Senter v. General Motors Corp.*, 532 F.2d 511, 522-23 (6th Cir.), cert. denied, 429 U.S. 870 (1976).   If the class has over **40 members**, it is adequate to satisfy the numerosity requirements.  *See Cox v. American Cast Iron Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also* C. Wright, A. Miller and M. Kane, *7A Federal Practice & Procedure* § 1762 (2d ed. 1986) (classes of less than 26 frequently found too small to satisfy the numerosity requirement); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

Plaintiff easily satisfies this factor.  The declarations attached to this Motion confirm that Defendants' locations each employ approximately 50-100 servers and carvers at one time who were all affected by Defendants' pay practice.  *See generally* Exhibits A-F.  Based on the fact that Defendants operate three (3) Fogo de Chao locations, and that each location employs 50-100 class members at one time, there is no doubt that the class includes **hundreds of class members** or maybe more.  Thus, the requirement of 23(a)(1) has been met.

2.   **There are questions of law and fact common to the class.**

Under Rule 23(a)(2), the commonality requirement is satisfied if the named Plaintiff shares at least one question of fact or law with the prospective class.  The Rule is disjunctive, thus a showing of a common question of either fact or law satisfies Rule 23(a)(2). *Georgia State Conference of Branches of NAACP v. State of Ga.*, 99 F.R.D. 16, 25 (S.D. Ga. 1983). "[O]ne significant common question of law or fact will satisfy this requirement. *Id*. Commonality "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc*., 273 F.3d 1341, 1346 (11th Cir. 2001). "A court will normally find commonality where a question of law refers to standardized conduct by defendants towards members of the proposed class." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991). However, it is not necessary that all members of the class have identical claims, as there is "no requirement here that issues subject to generalized proof predominate over those subjects to individualized proofs." *Murray*, 244 F.3d 807, 811; *see also Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000). [T]he rule requires only that resolution of the common questions affect all or a substantial number of the class members. *See Jenkins v. Raymark Indus., Inc*., 782 F.2d 468, 472 (5th Cir. 1986).

The questions of law and fact in this case are undeniably common.  The subject of the action is the Defendants' uniform policy of requiring servers, bartenders, and carvers to share tips with non-tipped employees.  Defendants cannot deny that all their servers, bartenders and carvers were paid by the hour, were paid the tipped minimum wage, and are entitled to be paid for each hour worked under Article X, Section 24 of the Florida Constitution.  All the class members share an interest in precluding these activities and recovering appropriate damages.

More specifically, Plaintiff's allegations present numerous common questions of law or fact as to all class members as follows:

    a)  Whether class members shared tips with back of the house workers;

    b)  Whether Defendants required class members to share tips with a non-tipped employee, i.e. the CSR;

    c)  Whether class members are entitled to compensation for minimum wages for these violations according to the Florida Constitution;

    d)  What remedies are appropriate compensation for the damages caused to Plaintiffs and each member of the class, including Liquidated Damages; and

    e)  Whether Defendants' failure to compensate Plaintiff and the class members at the applicable minimum wage rates was willful, intentional or done with reckless disregard.

This incomplete list of common questions of both law and fact unquestionably satisfies Rule 23(a)(2) as these fundamental questions pertaining to Defendants' common pay practices rely upon a single set of operative facts and are central to the resolution of the claim of the representative Plaintiff and each member of the proposed class.  Where, as here, the class members all seek recovery based on the same common interest and share a common interest in obtaining the relief sought, the commonality requirement is satisfied.  *See Bass v. PJCOMN Acquisition Corp.*, et. al., 2011 WL 2149602 (D. Col. 2011) (holding commonality requirement met in case involving employees required to pay for uniforms and other items); *Clausnitzer v. Fed. Express Corp.*, 248 F.R.D. 647, 656 (S.D. Fla. 2008) (holding commonality element was met where there was a company policy of failing to pay for all time worked).  Allegations of a policy or practice of treating the entire class unlawfully, as alleged here, satisfy the commonality requirement. *Cox*, 784 F.2d 1546, 1557-58.  Because common issues of fact and law exist, the commonality requirement of Rule 23(a)(2) has been met.

    **3.  Plaintiff's claim is not only typical but identical to that presented by the class.**

Rule 23(a)(3) requires "the claims or defenses of the parties are typical of the claims or defenses of the class." The claims of the representative parties need to be similar enough to those of the class so that they will adequately represent them. *Powers v. Stuart-James Co.*, 707 F.Supp.

499, 503 (M.D. Fla. 1989). The typicality requirement requires a class representative to "possess the same interest and suffer the same injury as the class members," albeit there may be substantial factual differences. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001). The distinction between commonality and typicality is "commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza*, 273 F.3d 1341, 1346. "'The typicality requirement may be satisfied despite substantial factual differences ... when there is a strong similarity of legal theories.'" *Clausnitzer*, 248 F.R.D. at 656 (Murray,F.3d at 811); *see also* 1 H. Newberg, *Newberg on Class Actions* § 3.13 at 3-71 (3d ed. 1992) (asserting that "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his claims are based on the same legal theory").

The proposed class representatives in this class action assert claims that are not only typical of but are actually identical to those of the other members of the proposed class. All claims of all proposed class members are based on the same legal theory: Defendants improperly deducted the tip credit from each server/bartender/carver's wage because of its improper tip pool deductions and failed to pay minimum wages for all hours worked pursuant to the Florida Constitution, Article X, Section 24 and the FLSA. All class members seek the same form of damages (i.e. $3.02 hourly reduction of wages). This set of circumstances satisfies the typicality requirement.

### 4. The Class Representatives will fairly and adequately represent the interests of the class.

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class. The adequacy requirement encompasses two steps:

(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

A conflict exists where the representatives' interests are antagonistic to the class, such that party members that claimed to be harmed by the conduct are in conflict with class members that claim to be benefited by the conduct. *Valley Drug Co.*, 350 F.3d at 1189.

Plaintiff proposes that he be named as the class representative of this class. The class representative and the class have a common interest in asserting their rights. There is no conflict of interest between the class representative and the absent members of the class. As the Fifth Circuit in *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981), *cert. denied*, 456 U.S. 988 (1982), explained:

> [S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.

*Id*. at 208. Here, the proposed class representative's interests are not antagonistic to or in conflict with the interests of the other class members since their claims are typical of and held in common with the claims of all members of the class. The proposed class representative is seeking the same damages for the class as for himself and can adequately represent the class.

The second part of the adequacy test also is satisfied here. With respect to this criterion, courts look to the skill and experience of Plaintiff's counsel rather than the personal qualifications of the named Plaintiff. *Horton v. Goose Creek Indep. Sch. Di*st., 690 F.2d 470, 484 (5th Cir. 1982), *cert. denied*, 463 U.S. 1207 (1983) (the adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel). Plaintiff's counsel in the instant case will provide fair and adequate representation for the class. The class will be represented by counsel with an outstanding record of accomplishment in the prosecution of wage and hour class actions. In this regard, counsel for the proposed class is particularly well-suited for this case. Attorneys Carlos

Leach of The Leach Firm, P.A. and Richard Celler of Celler Legal, P.A. have regularly engaged in major complex wage and hour litigation and have broad experience in employee-based, complex litigation which is similar in size, scope and complexity to the present case. *See* Affidavits Carlos Leach and Richard Celler attached as Exhibits H and I.

### 5. The Class Fulfills the Requirements of Rules 23(b)(3)

Once the requirements of Rule 23(a) are met, the Court must separately find the requirements of Rule 23(b) are met. Plaintiff proceeds under Rule 23(b)(3) for Count II, the minimum wage claim. Federal Rule 23(b)(3)[3] states a class action may be maintained if:

> The court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The matters pertinent to these findings include:

a. the class members' interests in individually controlling the prosecution or defense of separate actions;
b. the extent and nature of any litigation concerning the controversy already begun by or against class members;
c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
d. the likely difficulties in managing a class action.

### a) Common questions of law and fact predominate

A common question of law or fact predominates when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof. *Rutstein v. Avis Rent-A-Car Sys.*, Inc., 211 F.3d 1228, 1233 (11th Cir. 2000) citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997)

---

[3] The requirements for certification under Rule 23(b)(3) are less stringent and less severe than those for certification under sections (b)(1) and (b)(2) of the Rule. *See* H. Newberg and A. Conte, 1 Newberg on Class Actions § 4.20.

(Predominance requires an "overarching common issue" that breaks down into an unmanageable variety of individual claims). The Eleventh Circuit has held:

> Common issues of fact and law predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D.Ga.2001). Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3).

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). (emphasis added).

In the instant matter, the class claims predominate over the individual claims to such an extent that the individual claims will become subsumed within the class claims. The overarching class proof will override the individual proof. The class seeks minimum wage compensation based on a company- wide practice of requiring servers to participate in an unlawful tip-pool which includes tip distribution among employees who do not regularly and customarily receive tips (ie. back-of-the-house kitchen staff and the customer service representative). The only individualized proof required will be class members' individual determination of damages, readily determinable through a spreadsheet evidencing the number of hours each class member worked while subject to the unlawful tip-pool. "Although the amount of damages suffered is generally an individual matter, this issue should not preclude a finding of predominance." *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 254 (C.D. Cal. 1988) (citing B*lackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)); *see also R.J. Reynolds Tobacco Co. v. Engle*, 672 So.2d 39, 41 (Fla. 3d DCA 1996) (basic issues of liability common to class members will predominate over individual damages issues); Most importantly, a single adjudication will resolve whether Defendants' wage practices were in conformity with minimum wage laws without the need for burdening the court with duplicative suits to establish the same violation.

### b)   A class action is superior to other available methods of adjudication.

Not only do common questions predominate in the present litigation, but also as required by subsection (b)(3), a class action in this case "is superior to other available methods for the fair and efficient adjudication for the controversy."  As the United States Supreme Court held, concerns of fairness and efficiency for a class action are superior to hundreds of separate individual trials:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products Inc. v. Windsor*, 117 S.Ct 2231 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *accord Tenney v. Miami Beach*, 152 Fla. 126, 11 So.2d 188, 189 (1942) ("The very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more effective and expeditious, and to make available a remedy that would not otherwise exist."). In the context of employment practices affecting large groups of employees, the unfortunate reality is not only that the courts will be faced with thousands of individual claims, but instead that there will be relatively few cases filed compared to the number of injured parties, due to the relatively small size of individual claims.  As noted in P*ruitt v. Allied Chem. Co.*, 85 F.R.D. 100, 115 (E.D. Va. 1980), fairness to the compensatory and deterrent goals of the class action device requires courts to presume that relatively small claims may have merit and are entitled to be heard and resolved by our legal system.  *See also Broin*, 641 So.2d at 891-92 ("[I]f we were to construe the rule to require each person to file a separate lawsuit, the result would be overwhelming and financially prohibitive.").

Here, multiple individuals have already come forward and retained the undersigned to pursue their rights to their unpaid minimum wages.  If this matter is not certified as a class action,

then these individuals will be forced to file individual lawsuits, which would flood the court's docket and even result in varying and inconsistent verdicts. Additionally, there are hundreds of putative class members who are unaware that they have rights to additional minimum wages. In short, a class action is superior to any other method of resolving this litigation.

### B.  Minimum Wage Cases are Well Suited for Class Certification

A survey of similar lawsuits brought by restaurant servers demonstrate that class actions alleging violations of minimum wage laws are well suited for class certification. *See Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234 (2nd Cir. 2011)(finding that the requirements for class certification under Rule 23(a), (b)(3) had been met in class action suit brought by servers involving state minimum wage violations); *See also Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374 (N.D.Ill. 2011)(certifying class of servers who alleged state law minimum wage violations due to improper tip pool); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011)(certifying class of servers who alleged state law minimum wage violations); *Driver v. AppleIllinois*, LLC, 265 F.R.D. 293 (N.D.Ill. 2010)(certifying class of servers who alleged state law minimum wage violations).

Also, Florida cases demonstrate that class actions alleging violations of Florida minimum wage laws are well suited for class certification. *See Morgan v. Coats*, 33 So. 3d 59 (Fla. 2nd DCA 2010)(certifying class under Rule 1.220 where sheriff deputies alleged wage related claims); *See also Rosario-Guererro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010)(Granting Rule 23 certification including violations of the minimum wage provisions of the Florida Constitution); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. 2009)(R. 23 certification including violations of the minimum wage provisions of the Florida Constitution); *Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686 (S.D. Fla. 2007).

III.    **APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS**

A.  **Authority to Send Class Notice.**

FLSA class actions operate differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case.  Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id*. Conversely, in traditional class actions under Rule 23 of the Federal Rules of Civil Procedure, a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."  *See id*.

In *Hoffman- La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), the Supreme Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id*.   Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute.  Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.*  Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.  *See id.* at 487.  The Eleventh Circuit also held that the district court had authority to issue an order requiring notice to "similarly situated" employees of the defendant affording them the opportunity to "opt-in." *Dybach v. State of Florida, Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991).

B.  **The Eleventh Circuit Uses a Two-Tiered Approach That Only Requires Minimal Evidence .**

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. §216(b).  *See Hipp*, 252 F .3d at 1219 (stating that the two-tiered approach "appears to be an effective tool for district courts" in this circuit.); *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003). Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members.  *See id*. at 1218.

During Stage I notice proceedings, "[p]laintiffs need show only that their positions are similar, **not identical**, to the positions held by the putative class members." *Grayson*, 79 F.3d at 1096 (internal quotations and citations omitted) (emphasis added).  Because the court has minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See Cameron-Grant*, 347 F.3d 1240; *see also Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).  Moreover, allowing plaintiffs and the putative class members to first proceed through notice and discovery is contemplated by the two-tier approach.   A plaintiff merely must demonstrate a "reasonable basis" for a collective action.  *Hipp*, 252 F. 3d at 1219.

While Plaintiff has this burden, the burden is "**not heavy**," and "…[p]laintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Kreher v. City of Atlanta*, 2006 WL 739572, at *3 (N.D. Ga. 2006) (citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Thiebes v. Wal-Mart Stores, Inc.*, 1999 WL 1081357, at *2 (D. Or. 1999) (plaintiffs need only some factual nexus that they and the putative class were victims of a common policy or plan that violated the FLSA).

As indicated above, based on the allegations in the Amended Complaint and the attached declarations, Plaintiff more than meets his burden to demonstrate that he and the class members are similarly situated.  Here, Defendants employed similarly situated employees who worked in Defendants' business are similarly situated in that they were paid in a similar manner, performed similar job duties, worked similar hours and have similar wage claims. It is estimated that there could be approximately hundreds of employees similarly situated over the course of the three-year statute of limitation.   Thus, Plaintiff has shown a reasonable basis to support the addition of affected plaintiffs, and this warrants conditional certification.

### C. <u>Additional Similarly Situated Individuals Will Join the Lawsuit Once Provided Notice.</u>

Plaintiff has demonstrated that other similarly situated employees will join in the case if provided notice.  Currently, **<u>nine (9)</u>** employees have joined this prior to any Court notice being issued and have opted-in to this case.  *See* Docs. 18, 35.  This alone demonstrates that others desire to join if given notice of this matter.  *See Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763, at *3 (M.D. Ala. 2005) (three to five consents to join were sufficient to establish that others desired to opt in).  Moreover, it is reasonable to assume that there are similarly situated employees who allegedly experienced the same FLSA violations, these potential class members would opt-in to the lawsuit if given notice of it.  *See Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 629 (D. Col. 2002).  Allowing notification to a potential class will certainly avoid multiple lawsuits where numerous employees have been harmed by the same violation.  *See Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).  Plaintiff seeks Court authorization to send notice to the putative class members allowing them to join this collective action.

### IV.    <u>FACTORS IRRELEVANT TO THE COURT'S CONSIDERTAION</u>

### A. The "Merits" of Plaintiff's Claims Are Not Considered When Determining Whether to Grant Notice

Defendants' only effort to defend against Plaintiff's claims will be based upon some contention that Plaintiff and his co-workers were paid in compliance with the FLSA.  But, even if Defendants' argument was viable (which it is not as explained above), the fact remains that at this "conditional certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated."  *See Kreher*, 2006 WL 739572, at *4 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are "similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated"); *see also Shajan v. Baralo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. 2010) (At the conditional certification stage, "[w]eighing of the merits its absolutely inappropriate."); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff . . .."); *Goldman v. Radioshack Corp.*, 2003 WL 21250571, at *8 (E.D. Pa. 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."). Thus, setting Defendants' anticipated factual/legal arguments aside for purposes of Plaintiff's Stage I Motion, Plaintiff clearly has met his burden of proof on the "similarly situated" prong under *Hipp*.

### B. Courts Do Not Consider the Need for Discovery During Stage I.

The Eleventh Circuit and the district courts in it have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Grayson*, 79 F. 3d at 1099 (holding that a district court *may*, but is not required to hold an evidentiary hearing

prior to making its section 216(b) decision particularly where the Defendant's rights are not substantially affected) (emphasis added in original); *see also Lloredo v. Radioshack Corp*., 2005 WL 1156030, at *1 (S.D. Fla. 2005) (refusing to examine discovery in making its first stage similarly situated determination); *Harrison v. Enterprise Rent-A-Car Co.,* 1998 WL 422169, at *13 (M.D. Fla. 1998)(holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification). An examination of discovery is not appropriate because at this stage the Court is not making a factual determination regarding whether the putative class members are "similarly situated" question.  *See Pendelbury,* at *3 (stating that a factual determination of the similarly situated question is not appropriate at this time because of the early stages of the litigation).

Discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations.  *See Scott v. Heartland Home Finance*, 2006 WL 1209813, at *3 (N.D. Ga. 2006) (further citation omitted); *see also Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 520 (D. Md. 2000)("Factual disputes do not negate the appropriateness of court facilitated notice."). Additionally, courts have held that any individualized defenses are **not** considered at the Stage I analysis but are considered at the Stage II decertification stage.  *Simpkins v. Pulte Home Corporation*, 2008 WL 3927275, *5 (M.D. Fla. 2008) ("individual factual analysis is saved for the second stage of certification").  Because the "similarly situated" determination at the notice stage is preliminary, Defendants will not be prejudiced by the facilitation of notice because they can later argue that Plaintiff and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial once discovery is complete.

## C.  Plaintiff's Notice Should Be Mailed, Emailed and Sent Through Text Message

The ultimate goal should be providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted. To that end, Plaintiff requests that he be permitted to notify all putative class members within the defined class of the pendency of this collective action through mail, text message, and to email the Class Notice and Consent to Join Form. *Email* notice is the new norm of communication, serves to further the broad remedial purpose of the FLSA, and has widely been adopted by courts throughout the country. *See Alequin v. Darden Rests., Inc.,* No. 12–61742–CIV, 2013 WL 3945919 (S.D. Fla. July 31, 2013) (noting that the Southern District of Florida commonly approves e-mail notice to potential opt-in class members in FLSA cases); *Williams v. Coventry Health Care of Florida, Inc.*, 2016 WL 7013530 at * 1 (M.D. Fla. Oct. 4, 2016); *Collado v. J. & G. Transp., Inc.*, 2014 WL 5390569 at * 6 (S.D. Fla. Oct. 23, 2014); *Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *see also Butler v. Direct SAT USA, LLC*, 876 F. Supp.2d 560, 575 (D. Md. 2012) (allowing e-mail notice to putative class members because communication through e-mail is now the "norm."); *Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.*, 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012); *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)(noting that "communication through email is [now] the norm."). Many courts have previously authorized notice via text message and email in FLSA cases, given the statute's remedial purpose and the goal of transmitting the notice to as many potential class members as

possible. Moreover, as another court recently held, "[t]here is no sound reason not to do so here." *Butler v. DirectSAT USA, LLC*, 2012 WL 1203980, at *2 (D. Md. Apr. 10, 2012); *see also Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.*, 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012); *Landry v. Swire Oilfield Servs.*, L.L.C., 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017)("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"); *Bhumithanarn v.22 Noodle Mkt. Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (Court finding that "notice via text message is likely to be a viable and efficient means of communicating with many prospective members of [the] collective action" where it was shown text messaging was defendants' preferred method of employee communication.); *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (noting that "communication through email is [now] the norm."); *Kutzback*, 2014 WL 7187006, at *12 (permitting e-mail notice). "Given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130. In addition, Plaintiff requests that notice and consent to join be posted in a conspicuous location in Defendants' office where putative class members are expected to frequent. As recognized previously by the Middle District of Florida, "requests [to post notices] are routinely granted and the Court sees no reason to divert from that standard of practice in this case." *Scheall v. NICAEA Acad., Inc.*, 2015 WL 3991041, at *3 (M.D. Fla. June 30, 2015) (citing F*iore v. Goodyear Tire &Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. Mar. 10, 2011)); *see also Compagnone v. DL*

*Pool Service*, LLC Case No. 2:15-cv-647-Ftm-99MRM, D.E. 48 (M.D. Fla. Nov. 11, 2016); *Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569, at *6 (S.D. Fla. Oct. 2014) (". . . the Court orders Defendants to post a copy of the notice (both English and Spanish versions) as approved in this Order, along with the Consent to Become Party Plaintiff attached to the notice, at each of Defendants' locations at which such potential class members are employed. . . "); *Castillo v. P & R Enters., Inc.*, 517 F.Supp.2d 440, 449 (D.D.C.2007) (notices to be posted in Defendant's offices).

### D. Putative Class Members Should Be Allowed to *Electronically* Execute Their Consent Forms.

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *see also Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 518 (W.D. Tex. 2015) (allowing plaintiff to employ its proposed electronic signature method for execution of consent forms); *White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service). In the instant case, Plaintiff requests that they be permitted to give class members the option to sign their consent tojoin forms electronically via "Adobe Sign." Giving the putative class members this option is in line with the FLSA's remedial purposes and would ensure that the putative class members have the ability to submit their consent forms without additional obstacles standing in their way especially considering the **COVID-19** factor.

### E.  A Reminder Notice Is Appropriate.

Similar to the email and text message transmission of the Notice, a reminder notice is appropriate as well. Courts have repeatedly permitted such a reminder notice, because it ensures that putative class members are aware of their rights and the time within which to exercise same. *See Martinez v. DHL Express (USA) Inc.*, 2016 U.S. Dist. LEXIS 14304 (S.D. Fla. Feb. 5, 2016); *Hargrove v. Ryla Teleservices, Inc.*, 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send a reminder letter to putative class members if responses were not received by plaintiffs within thirty days from the issuance of the original notice.); *Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (same); *Graham v. Overland Solutions, Inc.*, 2011 WL 1769737, at *4 (S.D. Cal. May 9, 2011) (approving reminder postcard to individuals who have not returned the opt-in forms); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice."); *Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 835, 847(N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (ordering third-party administrator to send reminder notice, because, "[t]hese procedures provide the best possible notice to the Class Members."). In light of the FLSA's remedial purposes, and the many cases explicitly approving a reminder notice, this Court should permit Plaintiff to send the putative class members a reminder notice via email, text message, and U.S. Mail, at the half-way point in the notice period to ensure that they are aware of their rights and the applicable deadlines within which to exercise them.

## V.  NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS

Notice within a three-year statute of limitations period is appropriate in this case.  The FLSA allows plaintiffs to collect damages within a three-year statute of limitations if they can show that a defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  The overwhelming majority of Courts use a three-year statute of limitations period at the notice stage.  *See Simpkins v. Pulte Home Corp.*, 2008 WL 3927275 at p. 9 (M.D.Fla.2008)(the determination whether that standard is met in this case is fact determinative and will not be made at the conditional certification stage).

## VI.    LIMITED DISCOVERY OF NAMES AND ADDRESSES OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members.  *Morden v. T-Mobile USA, Inc.*, 2006 WL 1727987, at *3 (W.D. Wash. 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court).  As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice.  *See, e.g., Hoffmann-La Roche*, 493 U.S. at 165; *see also Dietrich v. Liberty Square*, 230 F.R.D. 574, 581 (N.D. Iowa 2005); *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1169 (D. Kan. 2006).   Thus, if this Court grants Plaintiff's Motion, the Court should likewise order Defendants to provide Plaintiff with a list of all putative class members' names, addresses and e-mail addresses to carry out notice.

## CERTIFICATE OF CONFERRAL

Pursuant local rules, undersigned counsel contacted counsel for Defendants regarding the relief requested in this Motion and is authorized to represent that Defendants' object to the relief requested in this Motion.

## CONCLUSION AND RELIEF REQUESTED

For the reasons more fully discussed above, the Plaintiffs ask this Court to enter an Order providing for: (1) class certification under Rule 23 for minimum wage claims for those class members identified in the class definition; (2) conditional class certification and Notice under the FLSA for minimum wage claims and restitution of tips unlawfully distributed to employees who do not customarily and regularly receive tips; (3) the Parties to confer about the form and content of the notice that will be sent to potential opt-in plaintiffs (should the motion be granted); (4) Defendants to produce the names, address, phone numbers and personal email addresses of all potential class and collective action members; and (5) appoint Plaintiff, The Leach Firm, P.A. and Celler Legal, P.A. as the class and collective representatives of the classes.

Dated this 15th day of May, 2020.

Respectfully submitted,

*s/ Carlos V. Leach*
Carlos V. Leach, Esq.
Florida Bar No. 0540021
THE LEACH FIRM, P.A.
631 S. Orlando Avenue, Suite 300
Winter Park, FL 32789
Telephone: (407) 574-4999 ext. 416
Facsimile: (833) 813-7512
Email: cleach@theleachfirm.com
Email: yhernandez@theleachfirm.com

*Attorneys for Plaintiff*

*s/ Richard Celler*
Richard Celler, Esq.
Florida Bar No. 0173370
RICHARD CELLER LEGAL, P.A.
10368 W. SR 84, Suite 103
Davie, FL 33314
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
Email: richard@floridaovertimelawyer.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of May 2020, a true and correct copy of the foregoing has been served via email to opposing counsel.

<u>***s/Carlos V. Leach***</u>
Carlos V. Leach, Esq.