**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BRUNO BALASSIANO,

     Plaintiff,

       v.

FOGO DE CHAO CHURRASCARIA
(ORLANDO) LLC, FOGO DE CHAO
CHURRASCARIA (JACKSONVILLE)
LLC, and FOGO DE CHAO
CHURRASCARIA (MIAMI) LLC,

     Defendants.

Case No. 6:19-cv-2140-ORL-78EJK

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

    A.    The Tradition of the "Churrasco" and the Role of the Gaucho ...................... 2

    B.    Other Positions ......................................................................................... 5

    C.    Customer Service Representative ............................................................... 5

    D.    The Tip Pool ............................................................................................. 6

    E.    The Named Plaintiff and Supporting Declarations ...................................... 7

ARGUMENT ....................................................................................................... 8

I.       THIS LAWSUIT ....................................................................................... 9

    A.    The Allegations of the Complaint .............................................................. 9

    B.    The Legal Framework .............................................................................. 10

II.      PLAINTIFF'S CLASS DEFINITION FAILS ........................................ 12

III.    PLAINTIFF DOES NOT SATISFY HIS BURDEN UNDER RULE 23 ................. 13

    A.    Plaintiff Cannot Establish Commonality or Typicality under Rule 23 .......... 14

    B.    Plaintiff Cannot Establish Predominance or Superiority under Rule 23(b)(3) ................................................................................................... 17

    C.    Plaintiff Fails To Establish Superiority ..................................................... 19

    D.    Cases Cited by Plaintiff .......................................................................... 20

IV.    PLAINTIFF DOES NOT SATISFY HIS BURDEN UNDER THE FLSA ............. 21

    A.    Interest of Others ................................................................................... 21

    B.    Similarly Situated ................................................................................... 22

V.      THE COLLECTIVE ACTION NOTICE PROPOSED BY PLAINTIFF IS IMPROPER .......................................................................................... 24

CONCLUSION .................................................................................................. 25

CERTIFICATE OF SERVICE .......................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarez v. Uno Restaurant Assoc., Inc.*
    2018 WL 2305561 (S.D. Fla. May 21, 2018) ............................................................14, 23

*Bass v. PJComm Acquisition Corp.,*
    2011 WL 2149602 (D. Col. June 1, 2011)...........................................................................14

*Beecher v. Steak N Shake Operations, Inc.,*
    904 F Supp. 2d 1289 (N.D. Ga. 2012) ........................................................................21, 23

*Belloso v. Asplundh Tree Expert, Co.,*
    2018 WL 4760822 (M.D. Fla. July 18, 2018), *report and rec. adopted as*
    *modified*, 2018 WL 4760671 (M.D. Fla. Aug. 24, 2018) ....................................................25

*Belt v. P.F. Chang's China Bistro, Inc.,*
    2019 WL 3829459 (E.D Pa. Aug. 15, 2019) ......................................................................10

*Bennett v. Hayes Robertson Grp., Inc.,*
    880 F. Supp. 2d 1270 (S.D. Fla. 2012) ...........................................................11, 12, 14, 16

*Black v. P.F. Chang's China Bistro, Inc.,*
    2017 WL 2080408 (N.D. Ill. May 15, 2017)......................................................11, 22, 23

*Bondi v. New Rochelle Hotel Associates*,
    2018 WL 7246962 (S.D.N.Y. Dec. 7, 2018) .................................................................9, 13

*Brown v. Electrolux Home Prods., Inc*.,
    817 F.3d 1225 (11th Cir. 2016) .......................................................................8, 9, 17, 18

*Clausnitzer v. Federal Express Corp.,*
    248 F.R.D. 647 (S.D. Fla. 2008)........................................................................................14

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013).........................................................................................................9

*Diggs v. Ovation Credit Serv., Inc.,*
    2020 WL 109436 (Jan. 9, 2020) .......................................................................................12

*Dozier v. DBI Servs., LLC.,*
    2020 WL 881698 (M.D. Fla. Feb. 24, 2020) ....................................................................25

## TABLE OF AUTHORITIES (Cont.)

*Driver v. AppleIllinois LLC*,
    265 F.R.D. 293 (N.D. Ill. 2010)......................................................................20

*Fennell v. Navient Solutions, LLC*,
    2019 WL 3854815 (M.D. Fla. June 14, 2019)................................................13

*Fonseca v. Dircksen & Talleyrand Inc.*,
    2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014)................................................17

*Gear v. Vista Clinical Diagnostic, LLC*,
    2016 WL 7045618 (M.D. Fla. June 3, 2016)................................................24

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997) ......................................................................19

*Johnsey v. BAL TK, LLC*,
    2019 WL 3997072 (N.D. Ala. Aug. 23, 2019) ..............................................25

*Kiley v. MedFirst Consulting Healthcare Staffing, LLC*,
    297 F. Supp. 3d 1260 (N.D. Ala. 2018)....................................................24, 25

*Kraft v. Freight Handlers, Inc.*,
    2019 WL 3854989 (M.D. Fla. May 21, 2019)................................................25

*Metzler v. Med. Mgmt. Int'l, Inc.*,
    2020 WL 1674310 (M.D. Fla. Mar. 4, 2020) ................................................24

*Monzano-Moreno v. Libqual Fence Co.*,
    2019 WL 1333264 (E.D.N.Y. Mar. 25, 2019)..............................................23

*Moreno-Espinosa v. J & J Ag. Products, Inc.*,
    247 F.R.D. 686 (S.D Fla. 2007)....................................................................21

*Napoles-Arcila v. Pero Family Farms, LLC*
    2009 WL 1585970 (S.D. Fla. 2009) ..............................................................21

*Nielsen v. 1111 Roof Top LLC*,
    2015 WL 12533150 (S.D. Fla. Sept. 18, 2015) ........................................12, 13

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
    2011 WL 6794438 (S.D. Fla. Apr. 19, 2011) ................................................21

*Rosario-Guerreo v. Orange Blossom Harvesting*,
    265 F.R.D. 619 (M.D. Fla. 2010)..................................................................21

**TABLE OF AUTHORITIES (Cont.)**

*Rutstein v. Avis Rent-A-Car Systems, Inc.*,
  211 F.3d 1228 (11th Cir. 2000) ...................................................................19

*Shahriar v. Smith & Wollensky Rest. Grp. Inc.*,
  659 F.3d 234 (2d Cir. 2011) .......................................................................15

*Smith v. Tradesmen Intern., Inc.*,
  289 F. Supp.2d 1369 (2003) .......................................................................22

*Stelmachers v. Maxim Healthcare Servs., Inc.*,
  2013 WL 12251411 (N.D. Ga. Aug. 5, 2013) ..............................................24

*Stuven v. Texas de Brazil (Tampa) Corp.*,
  2013 WL 610651 (M.D. Fla. 2013) .............................................................22

*Trentman v. RWL Commc'ns, Inc.*,
  2015 WL 2062816 (M.D. Fla. May 4, 2015) ................................................24

*Tyler v. Payless Shoe Source, Inc.*,
  2005 WL 3133763 (M.D. Ala. Nov. 23, 2005) .............................................22

*Ulysse v. Waste Mgmt. Inc. of Fla.*,
  2013 WL 11327137 (S.D. Fla. Sept. 13, 2013) ...........................................19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................9, 14, 20

*White v. 14051 Manchester Inc.*,
  301 F.R.D. 368 (E.D. Mo. 2014) ......................................................... *passim*

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
  275 F.R.D. 193 (S.D.N.Y. 2011) ................................................................20

*Williams-Green v. J. Alexander's Restaurants, Inc.*,
  277 F.R.D. 374 (N.D. Ill. 2011) .................................................................20

**Statutes**

29 U.S.C. §203(m)(2)(A) ...............................................................................11

29 U.S.C. §203(t), 203(m) .............................................................................10

Fair Labor Standards Act (29 U.S.C.A. § 201) ................................... *passim*

Florida Minimum Wage Act (Fla. Stat. § 448.110) ............................. *passim*

**TABLE OF AUTHORITIES (Cont.)**

**Other Authorities**

29 C.F.R. §531.56e .......................................................................................................10

84 FR 53956 (Oct. 8, 2019) .........................................................................................10

DOL FAB No. 2019-2 ...................................................................................................10

DOL Op. Letter, FLSA2018-27 (11/8/2018) ................................................................10

Fed.R.Civ.P. Rule 23 .....................................................................................................1

Fed.R.Civ.P. Rule 23(a) ...............................................................................................14

Fed.R.Civ.P. Rule 23(a) and 23(b)(3) ..........................................................................13

Fed.R.Civ.P. Rule 23(b)(3) ..........................................................................................14

FOH § 30d00(f) .............................................................................................................10

Rule 23 ................................................................................................................... *passim*

Rule 23(a) ......................................................................................................................16

Rule 23(b)(3) ...........................................................................................................17, 19

## **INTRODUCTION**

Plaintiff Bruno Balassiano's conclusory motion for class certification comes nowhere near satisfying the class action requirements of Rule 23 or the collective action requirements of the Fair Labor Standards Act ("FLSA").   Defendants Fogo de Chão Churrascaria (Orlando) LLC ("FOGO Orlando"), Fogo de Chão Churrascaria (Jacksonville) LLC ("FOGO Jacksonville), and Fogo de Chão Churrascaria (Miami) LLC ("FOGO Miami") (collectively, "Defendants"), each own and operate steakhouses based on the Brazilian tradition of cooking and serving meats "churrasco" style, part of Brazil's "gaucho" (cowboy) heritage.   The central feature of the guest experience is their interaction with the "churrasqueiros," also known as "gauchos." The churrasqueiros circulate among the guests, using a highly specialized "gaucho" knife to carve meat off of long skewers as requested by the guests.

Plaintiff claims that Defendants engaged in "illegal tip pooling practices" that create minimum wage violations under the Florida Minimum Wage Act ("FMWA") and the FLSA. He attempts to certify identical classes under each statute, consisting of "all servers, bartenders, and carvers . . . who were not paid full and proper minimum wage as a result of Defendants' illegal tip pooling practices." Mot. at 1-2.

Plaintiff's motion, which is based on muddled and misstated legal theories, should be denied.  First, the class definition is meaningless and unworkable, and includes positions that do not even exist.   Moreover, the definition conflates the theories of alleged liability supporting the claims in this case, which have to be addressed separately for class certification purposes to avoid utter confusion.  Second, the proposed class meets neither the requirements of commonality, typicality, nor predominance or superiority under Rule 23.

Third, Plaintiff fails to establish that others from FOGO Miami (or more than one from FOGO Jacksonville) are interested in the suit or that he is substantially similar to those he seeks to represent as required by the FLSA.  Finally, the proposed notice is improper.

## STATEMENT OF FACTS[1]

Each restaurant operating under the FOGO brand utilizes corporate payroll, marketing, human resources, legal, and purchasing services.  RL, 8.  Other than these common administrative functions, each restaurant operates independently and is a separate legal entity.  RL, 8.  Each restaurant has a separate General Manager and supporting management staff, who make their own decisions about staffing, scheduling employees, and how to serve the guests at the restaurant.  RL, 8.  Operational and staffing needs of each restaurant vary based on the size and volume of business at each restaurant.  RL, 8.

### A.      The Tradition of the "Churrasco" and the Role of the Gaucho

FOGO offers its guests the full Brazilian "Churrasco" experience.  RL, 10.  Guests are presented with a prix-fixe menu which includes continual service of fire-roasted meats carved tableside by Gauchos.  RL, 10.  The experience starts at the Market Table & Feijoada Bar, featuring seasonal salads, fresh vegetables, soups and other items.  RL, 10.  Guests also enjoy traditional Brazilian side dishes such as FOGO's world famous pão de queijo (cheese bread), garlic mashed potatoes, and crispy polenta served tableside.  RL, 10.

The primary feature of a churrascaria is the "Gaucho" or "Churrasqueiro," who is responsible for interacting with guests and serving meat.  RL, 20.  They wear traditional Brazilian garb consisting of bombashas (pants), lenço (scarf), guaiaca (belt), faixa (sash), and

---

[1]In support of their opposition, Defendants have filed the declarations of Rick Lenderman ("RL" followed by paragraph number and exhibit number);Alex Burgos ("AB" followed by paragraph number); Neimar Hansel ("NH" followed by paragraph number); and Marcio Welter ("MW" followed by paragraph number).

circulate continuously through the restaurant serving large skewers of different meats. RL, 20.  The Gauchos use a special knife called a "faca" or "gaucho knife" to spear precut meat off of the skewers or to carve it from large steaks in front of guests, who indicate how much they want and the degree of doneness.  RL, 20.  The meat is cooked and kept on rotisserie ovens.   As is part of the churrasco tradition, Gauchos monitor the meat for doneness, season the meat (salt and pepper), pick up the skewers and return to the floor to serve.  In FOGO Jacksonville, the room where the rotisserie ovens are located is open to the restaurant floor, allowing the guests to see the meat being cooked through a large window, while at FOGO Orlando and FOGO Miami this area is in an adjacent enclosed room. NH, 35, Ex. 1; MW, 31, Ex.1; AB, 27, Ex 1.

Defendants' restaurants handle the meat-related duties that appear to be at the heart of Plaintiff's claims, very differently.  At FOGO Orlando, the majority of the meat preparation–cutting, trimming, seasoning, and placing the meat on skewers is performed by a Butcher, a non-tipped position.  NH, 18.  In 2014, a butcher was present an average of 5.29 hours per day and in 2015, 5.48 hours per day.  RL, 22.  In 2016, a butcher was present an average of 4.56 hours per day; in 2017, 7.04 hours per day, in 2018, 5.91 hours per day; and in the first quarter of 2019, 5.57 hours per day.  RL, 22.  The room used for butchering accommodates only one person.  NH, 19.  On the odd occasion that the Butcher was out or the restaurant was exceptionally busy, some Gauchos might be asked to spend approximately 30 minutes preparing the meat (such as cutting and skewering it) prior to the opening of the restaurant at noon each day or at 4:30 or so before dinner as side-work.  NH, 20.  If a Gaucho had to fill in for a Butcher for any period beyond this limited amount of side-work, then they were

removed from the tip pool and paid for that time in a non-tipped capacity (shown on their paycheck as a "Miscellaneous" entry, as discussed below).  NH, 20.

In contrast, at FOGO Jacksonville, a Butcher has handled the meat preparation duties for most of the time that the restaurant has been open (November 2017).  MW, 10.  If no Butcher was available, another employee would clock in as a Person in Charge ("PIC"), also a non-tipped position.  MW,11.  This employee spends approximately two hours preparing the meat for the entire day.  The PIC is not part of the tip pool, and is paid approximately $10 per hour.  MW, 11.  Once these duties are complete, the employee clocks out as a PIC and clocks back in as a Gaucho.  MW, 12.  He then continues to perform meat-related duties as sidework until the restaurant opens at 11:00 a.m. when he starts to serve guests.  MW, 12.  As for the dinner shift, if needed, a Gaucho returns to the restaurant between 4:00 and 5:00 p.m. to prepare meat for the evening shift.  MW, 15.  At 5:00 p.m. when the restaurant opens, he would assume his serving duties.  MW, 15.  If still further meat preparation is required, a different Gaucho assumes this role until more guests arrive.  MW, 15.

FOGO Miami uses yet another set-up.  One Gaucho arrives for work approximately two hours before opening, and clocks in under a Butcher code, during which time he pre-cooks and prepares meat.  AB, 9.  As a Butcher, the employee does not participate in the tip pool, and is paid over the full minimum wage rate. AB, 9.  This responsibility is rotated among the Gauchos.  AB, 9.  When the restaurant opens to guests, this employee clocks out as a Butcher, clocks back in as a Gaucho, and begins serving guests in the dining room.  AB, 9.  This process is repeated for the evening shift, except that the Gaucho who clocks in as the Butcher before guests arrive does so for approximately one hour.  AB, 10.

**B.      Other Positions**

A "Server" at any of the restaurants greets guests, serves drinks, delivers hot sides and desserts, but has no duties related to meat preparation or serving meat.  NH, 17; MW, 18; AB, 16.  A Bartender, as the name implies, tends bar and serves drinks, as well as cutting limes and preparing the area.  NH, 28; MW, 24;AB, 20.  Both of these are tipped positions. RL, 36.  Plaintiff's class definition includes "servers, bartenders, and carvers."  There is not (nor has there ever been) a position called a "carver."  RL, 11; NH,  29; MW,  25; AB,  21.

**C.      Customer Service Representative**

In order to achieve the guest interaction needed to create the "churrasco" experience, FOGO utilizes a vertically integrated team, where many positions "touch" the tables on a regular basis, including the Customer Service Representative ("CSR").  RL, 29.  The primary role of the CSR is to explain the FOGO concept to the guests and provide customer service. RL, 29; NH, 22.  They also regularly communicate guest needs to other team members, not as directives, but as part of guest service, in the same manner that a Server communicates specific guest requests.   RL, 30; NH, 22; MW, 19; AB, 18.   CSRs do not focus on the performance of the Gauchos, are not members of management, and have no responsibility or authority with respect to the hiring, firing, and/or disciplinary matters relating to other employees.  RL, 30; NH, 23; MW, 20;AB, 19.  They are not responsible for the appearance of other employees or for advising employees when their shifts are over.  RL, 30; NH, 26; MW, 20; AB, 19.  CSRs do not regularly attend management meetings, but when they do, their involvement is limited to customer service issues and major upcoming events, but not any employee discipline issues.  NH, 25; MW, 21; AB, 18.

**D.      The Tip Pool**

FOGO's established policy is to comply with all applicable wage and hour laws and pay employees for each hour worked pursuant to the requirements of the FLSA and the FMWA.  RL, 6.  Tipped employees are to perform tipped duties during their working hours, and if a tipped employee has to perform non-tipped duties outside of what is permitted by law, FOGO ensures that the employee does not participate in the tip pool, but rather is paid an hourly rate that is at or above the minimum wage rate.  RL, 7.  FOGO also does not require tipped employees to participate in a tip pool with "back of the house" employees, and does not retain any tip income received during a shift.  RL, 7.

The tip pool at Fogo is comprised of several non-management positions, including Servers, Churrasqueiro I, Churrasqueiro II,[2] Bartenders, CSRs, and Bussers, all of which are guest-facing positions that customarily and regularly receives tips.  RL, 12.  All tipped employees review and sign a Tip Pooling Agreement and Tip Credit Disclosure at the time of hire.  RL, 13, Exs. 1, 2.  The Tip Pooling Agreement signed by Plaintiff and the Declarants provides that up to 7% of all credit card tips will be shared among Bussers who worked that shift (bussers are paid a full minimum wage rate), though Bussers do not receive cash tips.  RL, 13.  The remaining 93% is shared among the Bartenders, Servers, Churrasqueiro Is, Churrasqueiro IIs, and CSRs who worked the shift.  RL, 13.  CSRs only earn 85% of what the other tipped employees earn because they receive a higher hourly rate of pay.  RL, 14. FOGO retains no tip income received during a shift.  RL, 14.

---

[2]The Churrasquiero II position is a Brazilian resident who worked for FOGO in Brazil and is in the United States on a special immigration status.  Due to this immigration status, they are paid full minimum wage plus tips.  RL, 12, fn. 1.

Up until April 2019, FOGO Orlando and FOGO Miami utilized a tenure based system in distributing tip earnings, where the percentage of the tip pool received by the employee depended on how long they had worked at the restaurant.  RL, 16.  After April 2019, both restaurants switched to a system where employees receive a pro rata portion of the tip pool based on the number of hours that they work. RL, 17.  This "pro rata" system was used in FOGO Jacksonville since its first day of operations in November 2017.  RL, 17; AB, 25.

If a tipped employee is taken from the restaurant floor and assigned to perform non-tipped duties, he is not paid as part of the tip pool.  RL, 25; NH, 20; AB, 12.  Instead, he is paid an hourly wage that is equal to the hourly wage he would have been paid as a tipped employee plus an amount approximating what he would have made in tips during that shift, resulting in pay that is well over the full minimum wage.  RL, 25.  The money to pay this differential does not come from the tip pool itself, but is paid separately by Fogo.  RL, 26.  This way, the employees working in the tip pool receive all of the tips, but the employee who has been called to work in a non-tipped role will not have lost any money by virtue of performing the non-tipped role.  RL, 27; NH, 20; MW, 27; AB, 12.  In short, Fogo itself bears the cost of this payment system.  RL, 26.  The additional payment (over and above the hourly rate for tipped employees) is reflected on the payroll stubs as a "Miscellaneous Earnings" wage adjustment.  Thus, employees performing non-tipped duties do not remain in a tipped status, but the tip rate is used as the means for calculating an increased higher rate to be paid to him.  RL, 27; Ex. 3.

### E.     The Named Plaintiff and Supporting Declarations

The Declarations submitted by Plaintiff are cookie-cutter and conclusory.  Plaintiff

submitted no evidence regarding FOGO Miami (nor are there any opt-ins), and only one declaration from a FOGO Jacksonville employee (the only opt-in from Jacksonville). Three of the nine opt-ins (Afonso, Costa, Rodrigues) are outside the scope of any possible statute of limitations for purposes of an FLSA claim. Balassiano, the alleged representative plaintiff, worked only as a Churrasqueiro and never as a Server or Bartender.[3] Two of the opt-ins to the FLSA action (Oliveira and Santos) filed no declarations in support of this motion.

## ARGUMENT

Under Rule 23, Plaintiff bears a heavy burden in seeking class certification and the Court "must conduct a 'rigorous analysis' to determine whether [he] carried [his] burden." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). Contrary to Plaintiff's misrepresentation to this Court (Mot. at 6), the Eleventh Circuit in *Brown* noted, "All else being equal, the presumption is against class certification." *Id.* at 1233 (emphasis added). Further, and again contrary to Plaintiff's statements (Mot. at 6), a district court must not accept a plaintiff's substantive allegations as true or draw inferences in his favor. *Id.* at

---

[3]Plaintiffs submitted the following declarations: **Named Plaintiff Balassiano**–employed 10/10/15-3/15/18, Churrasqueiro I. RL, 37 ; Alleged duties: "serving food and drinks, seasoning meats, putting them on skewers and loading them into a rotisserie" (Balassiano Decl. 9); **Costa -**employed 12/14/14-2/20/16**,** Server Trainee, Server, RL, 39; Alleged duties: "served and assisted guests" (even though he does not state he was a "carver," his declaration includes the standard paragraph in each declaration that "when he prepared and cooked meats in the kitchen" he was paid at the server rate. (Costa Decl. 15); **Medeiros –** employed 11/27/13-2/19/16**;** Churrasqueiro 1 (12/20/13-2/19/16), Server (2/19/16-1/8/18), RL, 40; Alleged duties: "preparing or cooking meats," "or rolling napkins and washing dishes." (Medeiros Decl. 16); **De Araujo-Rodrigues –** employed 8/21/13-11/20/14, 7/10/15-8/25/16**,** Busser Trainee (8/21/13-9/5/13), Busser (9/5/13-4/24/14), Server (4/24/14-11/20/14), and returned as Server (7/10/15-8/25/16), RL, 41; Alleged Duties: "serving and assisting guests, serving and preparing meats, bussing tables, preparing and serving drinks, washing and drying dishes and cutlery," "preparing meats in the kitchen" (Rodrigues Decl. 12). Answers to court interrogatories described his duties as: "greet guests, take orders, explain restaurant, carve meats at the table." Doc. 29; **Afonso** – employed 9/2014-2/2/15; in Orlando from 9/14 to 2/16/15 as Server Trainee and Server; moved to a FOGO restaurant in Denver in 2/15, RL, 38; Alleged Duties: "serving and assisting guests" and "preparing restaurant for dining service" without distinction between Denver and Orlando (Afonso Decl. 7); **Torres** (FOGO Jacksonville) – employed 11/29/17-2/2020; Butcher (11/29/2017-3/21/18); Churrasqueiro Trainee (3/21/18-4/2/18); Churrasqueiro I (4/2/18-2/20), RL, 43; Alleged Duties: "preparing meats," as a butcher, "serving and preparing meats" as a carver. (Torres Decl. 7-8).

1234.  As the Supreme Court has repeatedly emphasized, "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); see *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  "The party seeking class certification has a burden of proof, not a burden of pleading," *Brown*, 817 F.3d at 1234.  Class certification is appropriate only if Plaintiff **proves** he satisfies Rule 23.  Plaintiff falls short.

Plaintiff's burden to establish conditional certification under the FLSA, while different, is not non-existent.  "While only a 'modest factual showing' is required, the burden on plaintiffs 'is not non-existent and the factual showing . . . must still be based on some substance.'" *Bondi v. New Rochelle Hotel Associates,* 2018 WL 7246962, *6 (S.D.N.Y. Dec. 7, 2018) (citations omitted) (denying Rule 23 and FLSA certification in tip pool case). Plaintiff fails to meet this burden also.

## I.      THIS LAWSUIT

### A.      The Allegations of the Complaint

The Amended Complaint ("complaint" or "AC") (Doc. 1-1)[4] conflates multiple legal theories into one unwieldy structure that topples under its own weight, and cannot support the motion for class certification.  Balassiano, self-described as a "carver" (AC ¶7), first complains that "servers" were required to participate in a tip pool that included "dedicated kitchen workers" who do not customarily receive tips.  AC ¶52.  The complaint then explains that these "kitchen workers" are actually "carvers who would normally serve customers," but instead worked in the kitchen to season meats, place them on skewers and load them into rotisserie machines. AC ¶¶53-54. The declarations filed by Plaintiff claim that the "carvers"

---

[4]The operative complaint is attached to the Notice of Removal, Doc. 1-1.  Plaintiffs incorrectly identified it as the "Amended Complaint," even though it was actually their third amended complaint. The Second Amended Complaint, filed at Doc. 4, is an earlier filed version that did not include the FLSA count.

allegedly spent 40-50% of their time in kitchen duties rather than serving guests.  (Docs. 37-1, 37-2).  According to the complaint (and his declaration), Balassiano himself was one of the "carvers" who performed such duties.  He asserts that he was paid less than full minimum wage, and also illogically implies he improperly shared tips with himself, as he was in fact one of those very "kitchen workers." AC ¶7, 55; Balassiano Decl. 14. Plaintiff identifies <u>no</u> other "back of the house" employees with whom he allegedly had to share tips. Plaintiff then adds another tip sharing claim based on the inclusion of the CSR in the tip pool. AC ¶57.

### B.      The Legal Framework

As a general principle, an employer may pay less than minimum wage by taking a "tip credit" for tipped employees.  29 U.S.C. §203(t), 203(m).  If an employee is engaged in a "dual occupation" where one job is tipped and the other is not, then no tip credit can be taken for the time worked in the non-tipped occupation.  However, if the tipped employee spends a portion of his time performing duties "related" to the tipped occupation, such as a "counterman who prepares his own short orders or who takes a turn as a short order cook," then the tip credit can be taken for the entire time. 29 C.F.R. §531.56e.  The DOL's Field Operations Handbook initially stated that up to 20 percent of an employee's time could be spent performing related duties without an employer having to forego the tip credit.[5]  Thus, to the extent that Plaintiff bases his claim on the failure to pay full minimum wage for time

---

[5]In November 2018, the DOL rescinded the so-called "80/20" rule, stating that it did not intend to limit the amount of time spent on related, non-tipped duties.  *See* DOL Op. Letter, FLSA2018-27 (11/8/2018).On February 15, 2019, it revised the FOH to provide that employers are not prohibited from taking a tip credit based on the amount of time spent performing related duties if those duties are performed (1) "contemporaneously with the tipped duties" or (2) "for a reasonable time immediately before or after performing the tipped duties." *See* DOL FAB No. 2019-2; FOH § 30d00(f). In October 2019, the DOL published a Notice of Proposed Rule on the topic.  DOL NPRM, 84 FR 53956 (Oct. 8, 2019). No final rule has been published. Although some circuits have declined to defer to this new DOL guidance and have instead continued to apply the "80/20" rule, *see e.g.*, *Belt v. P.F. Chang's China Bistro, Inc*., 2019 WL 3829459, at *11-16 (E.D Pa. Aug. 15, 2019), neither the Eleventh Circuit or district courts therein have ruled on the issue.

spent in allegedly non-tipped work involving meat preparation, he will have to establish the nature of the duties he performed, whether they were "related" or "unrelated" to his tipped duties, as well as the amount of time spent in each task.

Separate and apart from the issue of whether Plaintiff performed non-tipped duties for which the employer could not take a tip credit are requirements regarding tip pools.  In order to take advantage of a tip credit, employers must permit employees to retain all of their tips, except that the "pooling of tips among employees who customarily and regularly receive tips" is permitted.  29 U.S.C. §203(m)(2)(A); *Bennett v. Hayes Robertson Grp., Inc.,* 880 F. Supp. 2d 1270 (S.D. Fla. 2012).  This claim is separate from a claim based on spending an excess amount of time on non-tipped duties, and requires Plaintiff to show that he shared tips with someone who did not regularly and customarily receive tips and as a result was not paid minimum wage.  This claim collapses with respect to the sharing of tips with the non-existent "carver" position, as Plaintiff himself was apparently one of the individuals with whom he claims he had to share tips, which makes no sense. He identifies no other "back of the house" or "kitchen" employee with whom he had to share tips.

Thus, Plaintiff's claim regarding his performance of meat-related duties has nothing to do with an allegedly invalid tip pool; instead, it appears to be a claim that he performed job duties for which the employer should not have taken a tip credit and for which he should have been paid full minimum wage. *See Black v. P.F. Chang's China Bistro, Inc.,* 2017 WL 2080408 (N.D. Ill. May 15, 2017) (describing claims regarding performance of non-tipped duties by plaintiffs as separate from claim regarding an invalid tip pool because it included quality assurance employees who performed non-tipped work).

11

## II.     PLAINTIFF'S CLASS DEFINITION FAILS

Even before considering the specific requirements of Rule 23 and the FLSA, courts must examine whether a class exists that can be adequately and precisely defined.[6] Certification should be denied if class definitions are overly broad, vague, or would require individualized determinations.  *Bennett v. Hayes Robertson Grp., Inc.,* 880 F. Supp. 2d at 1277; *Nielsen v. 1111 Roof Top LLC,* 2015 WL 12533150, *2 (S.D. Fla. Sept. 18, 2015).  For example, in *Bennett,* the court denied certification of an FMWA claim based in part on an allegation that class members had to share tips with employees who "did not work in the presence of customers" and that failed to distinguish between tipped and untipped employees and included employees who might have customarily received tips.  880 F. Supp. 2d at 1277.

Plaintiff's proposed definitions suffer from all these infirmities and are completely out of sync with what appear to be the basic legal theories.  The proposed classes consist of:

> **FMWA**:  All **servers, bartenders,[7] and carvers** who worked for Defendants within Florida during the 5 years preceding this lawsuit **who were not paid full and proper minimum wage as a result of Defendants' illegal tip pooling practices**
>
> **FLSA**:  All **servers, bartenders, and carvers** who worked for Defendants within Florida during the 3 years preceding this lawsuit **who were not paid full and proper minimum wage as a result of Defendants' illegal tip pooling practices**

There is no such position as "carver."  RL, 11.  Presumably, and based on the alleged meat-related duties, what Plaintiff refers to is the Churrasqueiro position.  Thus, servers, who

---

[6]Additionally, for both claims, Plaintiff seeks to certify a class based on a statute of limitations for willful violations (3 years for FLSA, 5 years for FMWA).  There is no basis to do so; indeed, none of the declarations assert any fact to support a finding of willfulness.  Further, the applicable FLSA period should not be tied to the filing of the lawsuit, but to the period prior to the giving of the notice.  *Diggs v. Ovation Credit Serv., Inc.*, 2020 WL 109436, *4 (Jan. 9, 2020) (notice period should be tied to giving of notice).

[7]The bartenders appear to be an afterthought; the complaint nowhere mentions bartenders in its proposed definitions.. AC ¶10,11; Mot. at 6.  Indeed, the Motion itself does not even address bartenders in its sections on numerosity (Mot. at 7).

perform no meat-related duties (even under the declarations submitted by Plaintiff) are lumped together with the churrasqueiros, apparently as part of an excess non-tipped duties claim, even though the definitions refer only to "illegal tip pooling." Similarly, the definitions do not distinguish between servers (or bartenders) who might be claiming they should not share tips with churrasqueiros; churrasqueiros who may claim that they spent excess time in non-tipped duties (which would not be a claim of the servers or bartenders); or between the tip sharing claim involving the CSR (or the unidentified "back of the house" workers) and the minimum wage claim. Nor do the definitions distinguish between the different restaurants and their highly independent methods of operations. As stated, there is no way to figure out who belongs in the class, nor is there an adequate and workable definition. *See Nielsen,* 2015 WL 12533150, at *2 (class definition improper under FMWA that included claims both of improper tip sharing and improper deductions).

The class definition also fails for the independent reason that the proposed class is an impermissible "fail safe" class whose definition shields the class from receiving an adverse judgment.  By including in the definition the qualifier that each class member was subject to an "illegal tip pooling" practice, "either the class members win, or by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Bondi v. New Rochelle Hotel Associates,* 2018 WL 7246962 at *13; *Fennell v. Navient Solutions, LLC*, 2019 WL 3854815, *4 (M.D. Fla. June 14, 2019).  This alone is a reason to deny certification.

## III.    PLAINTIFF DOES NOT SATISFY HIS BURDEN UNDER RULE 23

For purposes of his FMWA claim, Plaintiff must meet the exacting standards of Rule 23(a) and 23(b)(3) for all of his claims.  In order to do so, he must establish (1) numerosity,

(2) commonality, (3) typicality, and (4) adequacy of representation (for Rule 23(a)) and (1) predominance and (2) superiority (for Rule 23(b)(3)).

### A.    Plaintiff Cannot Establish Commonality or Typicality under Rule 23(a)

**Commonality** requires a plaintiff to show "questions of law or fact common to the class." As the Supreme Court explained in its landmark *Wal-Mart* decision, "[t]hat language is easy to misread, since any competently crafted class complaint literally raises common questions." 564 U.S. at 349.[8] What matters for commonality is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350. Thus, not only must a plaintiff's claim "depend upon a common contention," but "[t]hat common contention … must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.; see e.g., White v. 14051 Manchester Inc.,* 301 F.R.D. 368, 381 (E.D. Mo. 2014); *Bennett*, 880 F. Supp. 2d at 1281 (denying Rule 23 certification because affidavits made only conclusory allegations of a company-wide policy that tips had to be shared with back of the house workers); *Alvarez v. Uno Restaurant Assoc., Inc.* 2018 WL 2305561 (S.D. Fla. May 21, 2018) (denying Rule 23 certification for lack of commonality in connection with tip sharing claim).

The common questions identified by Plaintiff (Mot. at 9), which are different than those in his complaint,[9] highlight the utter confusion of the legal theories, as well as the

---

[8]Notably, Plaintiff ignores the requirements of *Dukes* as to commonality, and largely relies only on cases preceding that binding decision. Mot. at 8. For example, *Bass v. PJComm Acquisition Corp.,* 2011 WL 2149602 (D. Col. June 1, 2011) involved a corporate policy requiring all pizza delivery drivers to pay certain amounts (and did not address *Dukes,* decided two months prior), and *Clausnitzer v. Federal Express Corp.,* 248 F.R.D. 647 (S.D. Fla. 2008) is not even a minimum wage claim (and certification was denied in any event).
[9]The common questions identified in the complaint asked "whether servers and carvers were …wrongfully paid the tipped minimum wage." The question regarding the tip pool is set forth separately. AC ¶94.

individualized nature of the determinations required even if the theories could be sorted out. And they do not even purport to show how the questions would generate a common answer. The first question, "whether class members shared tips with back of the house workers" makes no sense. No back of the house workers with whom Plaintiff had to share tips are even identified. The Plaintiff cannot claim that he unlawfully shared tips with himself. Further, even if this question were construed to relate to the allegations regarding whether Plaintiff was improperly paid less than full minimum wage when performing non-tipped duties, there is no element of commonality.[10]  It is clear why Plaintiff ignores his own allegations regarding the performance of "related duties" or "unrelated duties":  such a claim is necessarily an individualized one. This is not a case such as *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234 (2d Cir. 2011), cited by Plaintiff (Mot. at 5), where a uniform policy required the plaintiffs to share tips with silver polishers or dishwashers.

The evidence establishes that no common policy existed to require any tipped employee to perform non-tipped duties in excess of what is permitted by law, much less a common policy that applied to all three restaurants. Each independent restaurant had a different practice with respect to how meat preparation was carried out and what happened in real time could vary from employee to employee. If an individual manager on occasion violated the policy and prescribed practice with respect to a particular employee, that does not carry over to other managers or employees, much less restaurants. No question exists regarding the alleged excess performance of non-tipped duties that will generate a common answer. Whether Plaintiff is claiming a "dual occupation" or whether he is claiming an

---

[10]Even cases that do clearly assert a minimum wage violation based on the inclusion of back of the house employees, such as cooks or dishwashers in a tip pool, have been denied certification under Rule 23. *See White v. 14051 Manchester Inc.,* 301 F.R.D at 380.

excess amount of time in "related" duties, answering each question requires an individual analysis of what each class member was doing. Additionally, the inclusion of bartenders and servers in the proposed class makes the individualized nature of the inquiry even more clear. There is no evidence whatsoever that bartenders or servers were required to prepare meats (or indeed, to engage in any non-tipped duties). This likewise means that each damages calculation has to be performed on an individual basis.

The second alleged common question involves the inclusion of the CSR in the tip pool. Yet this too highlights not commonality, but the lack thereof. Each restaurant could treat the CSR differently; for example, some restaurants might ask them to attend certain management meetings while others would not. The policy was for the CSRs not to serve as managers. Should that have happened on occasion, those circumstances would have to be examined individually and would invalidate the tip pool only for those periods. Notably, courts refuse under Rule 23 to certify classes even based on the alleged improper inclusion of employees in tip pools. *See e.g., White v. 14051 Manchester Inc.,* 301 F.R.D. at 380.

The remainder of the alleged "common questions" are circular and derive from the others. The question regarding "whether they would be entitled to compensation" under the FMWA is simply a liability question that necessarily results from the first two questions about tip sharing, as is the damages question. The question about willfulness cannot be separated from the individual nature of the fact questions, as set forth above.

The second requirement of Rule 23(a), **typicality,** "differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class." *Bennett,* 880 F. Supp. 2d at 1280. Here, although the Motion refers to class

representatives in the plural, the complaint identifies **only one** named class representative, Balassiano. AC ¶2. Balassiano served only as a Churrasqueiro I for a period from Oct. 2015 to Mar. 2018, and only at the Orlando location. He never worked as a server or a bartender (who in turn never had any meat-related duties). He does not even purport to have any knowledge regarding the operations or pay practices of any other Fogo restaurant, much less how they managed the performance of any allegedly non-tipped work. His claims cannot possibly be typical of servers or bartenders or those of employees at other restaurants.

Further, despite the fact the FMWA claim has been pending since 2018, no declaration was submitted from an employee at FOGO Miami, only one from Jacksonville, and only eight from Orlando. This lack of interest in the case alone shows that it is likely that other putative class members do not perceive themselves as suffering from the same or similar grievances. *White v. 14051 Manchester Inc.,* 301 F.R.D. at 381 (considering low opt-in rate in determining no typicality in state law minimum wage claim involving alleged tip pool sharing with non-tipped employees).[11]

### B.   Plaintiff Cannot Establish Predominance or Superiority under Rule 23(b)(3)

"To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements." *Brown*, 817 F.3d at 1234. Second, "[t]he district court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Id.* Individual

---

[11]Further, Balassiano's lack of typicality and inability to speak to the duties of other positions throws into doubt his ability to serve as an adequate representative of those employees. *White v. 14051 Manchester,* 301 F.R.D. at 381. Indeed, he could not represent the claim of a server who wanted to complain about the inclusion, for example, of a churrasqueiro in the tip pool and in fact would have a conflict of interest as he would have a vested interest in remaining in the tip pool himself. *See Fonseca v. Dircksen & Talleyrand Inc.*, 2014 WL 1487279, 2 (S.D.N.Y. Apr. 11, 2014) (cited by Pltf., Mot. at 3).

questions are those where the evidence will vary from member to member. Third, if "'common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'" *Id.* at 1234-1235 (alteration in original). Plaintiff cannot satisfy his burden on predominance. Predominance is a more demanding standard than mere "commonality," and if evidence will have to be presented that varies from member to member, then it is an individual question. *White v. 14051 Manchester,* 301 F.R.D. at 382.

Once again, Plaintiff's contention that common questions predominate is completely disconnected to the allegations of the complaint and the declarations. Plaintiff argues that there is a "company-wide practice" of requiring servers to participate in an unlawful tip pool which includes back of the house kitchen staff and the CSR." Mot. at 13. Plaintiff does not even address the issue apparently at the heart of the case, that is the non-tipped duties allegedly performed by the churrasqueiros (and theoretically by others, according to the proposed class definition). Indeed, none of the declarations even suggest that the Plaintiff or declarants had to share tips with "kitchen workers" or similar back of the house employees.

As with the question of commonality, in order to show that a tip credit was improperly taken because of the degree of non-tipped duties performed, each individual class member will have to show evidence of the amount of time each one spent in certain tasks. The way this was controlled varied from restaurant to restaurant. If a restaurant deviated from the policy of properly paying employees due to the vagaries of an individual manager, that epitomizes an individualized question as opposed to one that could be proved on a class

wide basis.  And, for the same reasons set forth in the discussion on commonality, the inclusion of the CSR similarly rests on an individualized assessment of what duties were performed by that individual at any given time.

This also undercuts Plaintiff's contention that damages are a matter of a mere spreadsheet.  Damages relate to liability, and depend on what periods of time an employee performed excess work (for the minimum wage claim) or for which the CSR engaged in managerial work (or other non-guest facing work) (for the tip pool claim).  *See Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir. 2000) (cited by Pltf., Mot. at 12).

And finally, the issue of "recklessness" or willfulness, given the overall individual nature of the question, requires an individualized determination that further undermines any argument about predominance.

## C.        Plaintiff Fails To Establish Superiority

Predominance and superiority are "intertwined."  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 n.12 (11th Cir. 1997).  Where, as here, "there are no predominant issues …, class treatment would be either singularly inefficient … or unjust."  *Id.*  Rule 23(b)(3) suggests that in making a superiority determination courts consider the interests in individually controlling the litigation of separate actions, the extent and nature of any litigation concerning the controversy already begun, the desirability or lack thereof of concentrating the litigation in one forum and the difficulties in managing a class action.

A class action is not superior where there are other means of providing plaintiffs with the relief they seek (*e.g.*, individual actions) and incentives to do so (*e.g.*, attorneys' fees). *Id.*; *accord Ulysse v. Waste Mgmt. Inc. of Fla.*, 2013 WL 11327137, at *4 (S.D. Fla. Sept. 13,

2013). Those means and incentives apply here. Indeed, the low number of individuals who have joined this action suggests there is an interest in individual control, as opposed to ceding control to the Plaintiff here. *White v. 14051 Manchester,* 301 F.R.D. at 383.

### D.    Cases Cited by Plaintiff

Finally, Plaintiff cites to a handful of cases in an attempt to urge this Court to grant Rule 23 certification and to ignore the infirmities of both the class definition and the application of the standards. None of these cases provide any additional support for the certification of a Rule 23 class: they either involved clearly uniform practices applicable to all putative class members (such as wage deductions) or the plaintiff showed a level of proof of a uniform policy and practice well above anything shown by Plaintiff here.

For example, *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374 (N.D. Ill. 2011) involved whether the employer retained a portion of a tip pool in violation of the state minimum wage act. The court found commonality and predominance because evidence supported a "widespread practice." That is not true here. *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) involved a uniform policy of taking certain deductions from paychecks of tipped employees.

While *Driver v. AppleIllinois LLC,* 265 F.R.D. 293 (N.D. Ill. 2010), a pre *Wal-Mart* case, did involve the performance of allegedly unrelated work, those plaintiffs supported their certification motion with standard operating procedures that showed that tipped workers were supposed to be utilized for unrelated duties, and the court found commonality on that basis. Further, the types of records available specifically noted the nature of the work was

being done at any given time, which enabled a common method of proof for each employee, thus meeting the predominance requirement.[12]

## IV.     PLAINTIFF DOES NOT SATISFY HIS BURDEN UNDER THE FLSA

While the standards for conditional certification under the FLSA are more lenient than those of Rule 23, they are not non-existent.  At this first stage, plaintiffs must show that there are other employees who wish to "opt in" to the action and that the representative employees are "similarly situated" to those in the prospective class with respect to job requirements and pay provisions.  *Beecher v. Steak N Shake Operations, Inc.*, 904 F Supp. 2d 1289 (N.D. Ga. 2012).   Plaintiffs must make "more than unsupported and generalized allegations," but must make "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  *Id.* at 1298.

### A.     Interest of Others

With respect to the interest of others in joining the class, Plaintiff has submitted only six declarations, five from FOGO Orlando and one from FOGO Jacksonville.   The declarations all assert only that "I know that if other people get notice of this lawsuit, they will want to join as well."  This is insufficient on its face (and notably does not even mention FOGO Miami) because an unsupported belief that others may want to opt in is insufficient. *See Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 2011 WL 6794438, *4 (S.D. Fla. Apr. 19, 2011) ("anticipation and belief" that others would join, as well as hearsay statements from other employees, were insufficient to establish conditional certification).

---

[12]The other cases on which Plaintiff relies all involve minimum wage claims of seasonal farmworkers under H-2A visas and have nothing to do with claims remotely resembling the ones here.  *See Rosario-Guerreo v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010); *Napoles-Arcila v. Pero Family Farms, LLC* 2009 WL 1585970 (S.D. Fla. 2009); *Moreno-Espinosa v. J & J Ag. Products, Inc.*, 247 F.R.D. 686 (S.D Fla. 2007).

**B.      Similarly Situated**

Even at the conditional certification stage, a plaintiff must make a showing of commonality between his claims and those of others, beyond the mere facts of job duties and pay provisions. *Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763, *4 (M.D. Ala. Nov. 23, 2005) (cited by Plaintiff, Mot. at 18).  Factors include "1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographic location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; [and] 5) the extent to which the actions which constitute the violations claimed by Plaintiffs are similar." *Smith v. Tradesmen Intern., Inc.*, 289 F. Supp. 2d 1369 (2003). Where plaintiffs have no evidence regarding locations outside of where they work for purposes of either a "non-tipped duty" claim or a tip sharing claim, they cannot establish they are "similarly situated" to employees from other locations, even for purposes of conditional certification.  *Black v. P.F. Chang's China Bistro, Inc.,* 2017 WL at 2080408, *8-9.

As to **job titles,** Balassiano worked only as a churrasqueiro,[13] never as a server or bartender, whose interests he supposedly represents, and was personally involved in meat preparation activities.  In *Stuven¸* relied upon by Plaintiff, the plaintiff was permitted to represent a class of both servers and bartenders, very different from a churrasqueiro who had meat-related duties trying to represent a class of servers or bartenders without such responsibilities who now allegedly are complaining about them.  *See also* n. 12, above.

---

[13]This is not a case like *Stuven v. Texas de Brazil (Tampa) Corp.,* 2013 WL 610651 (M.D. Fla. 2013) where the plaintiff specifically testified that he had knowledge of how servers and bartenders were paid in other locations.

Moreover, except for a conclusory statement about "serving guests", <u>none</u> of the declarations provide any specifics whatsoever about the nature of the server or the bartender positions. *See Alvarez v. Uno Restaurant Assoc., Inc.*, 2018 WL 2305561 (S.D. Fla. May 21, 2018) (denying conditional certification where there was no evidence in the declarations to explain how bussers and servers were similarly situated or to provide details about their duties).

As to **location**, Balassiano never worked outside of Orlando.  Given the wide differences in the operations of the different FOGO restaurants, he cannot be similarly situated to anyone in Miami or Jacksonville.  *See Beecher,* 904 F. Supp. 2d 1289 (N.D. Ga. 2012) (refusing to conditionally certify a nation-wide class action regarding an alleged policy of altering payroll records because each store manager did things differently); *Black v. P.R. Chang's China Bistro, Inc.*, 2017 WL at 2080408, *10 (named plaintiffs who had worked only at two restaurants could not rely on "generalized evidence of centralized control" to try to create an inference that alleged unlawful conduct had occurred at all restaurants in two states with respect to non-tipped duty work and tip sharing claims.)  *Monzano-Moreno v. Libqual Fence Co.,* 2019 WL 1333264, *5-6 (E.D.N.Y. Mar. 25, 2019). Similarly, and as set forth extensively above, the alleged FLSA violations depend wholly on how **individual managers** conducted their own restaurant operations on any given day.

The **time period** presents another obstacle to conditional certification.  Balassiano had ceased working at the time the new tip pooling policy went into effect and his FLSA claim, even under a 3 year statute, only goes back to 2016. In fact, at least three of the six declarants (a third of the 9 opt ins) have no FLSA claim, whether a two or a three year period is used.  *See* n. 6 above.

Finally, and especially given the confusion of the class definition, Balassiano's claim differs from those of the others, and their claims differ from each other. The claim about the CSR is not the same as the claim about excess time in non-tipped activities, and the claim of a churrasqueiro is not the same as the claim of the server or the bartender.

## V.   THE COLLECTIVE ACTION NOTICE PROPOSED BY PLAINTIFF IS IMPROPER

Even if conditional certification were granted, Plaintiff's proposals regarding the notice of opt-in rights under the FLSA is inappropriate, including in its attempt to utilize a three, rather than a two year statute of limitations and the improper start date for the notice period.[14] (Plaintiff does not actually submit a proposed form of notice.) The proposal is deficient in at least the following ways: First, a **reminder notice** is not necessary as such notices are redundant and can be interpreted as encouragement by the court for claimants to opt in.  *See e.g., Kiley v. MedFirst Consulting Healthcare Staffing, LLC,* 297 F. Supp. 3d 1260, 1268 (N.D. Ala. 2018) (refusing to allow reminder notice to be sent because it "could improperly suggest the court's endorsement of Plaintiffs' claims).[15] Second, a **posting** at Defendants' offices is also inappropriate where, as here, no reason is given that other means of delivery will not work.  *See Gear v. Vista Clinical Diagnostic, LLC,* 2016 WL 7045618, at *5 (M.D. Fla. June 3, 2016)*, report and rec. adopted,* 2016 WL 7213052 (M.D. Fla. July 1, 2016) (denying request to post notice where the "[p]laintiffs have failed to offer any explanation as to why three alternative modes of delivery are necessary.");  *Stelmachers v.*

---

[14]There is no basis here for utilizing a five year (FMWA) or three year (FLSA) period for employees, both of which require willfulness. *See also* n. 6 above.
[15]*See also Trentman v. RWL Commc'ns, Inc.*, 2015 WL 2062816, at *5 (M.D. Fla. May 4, 2015) ("Sending a putative class member notice of this action is informative; sending them a 'reminder' is redundant.");  *Metzler v. Med. Mgmt. Int'l, Inc.*, 2020 WL 1674310, at *6 (M.D. Fla. Mar. 4, 2020) ("The Court does not approve the sending of follow-up or reminder communications to potential opt-in plaintiffs.")

*Maxim Healthcare Servs., Inc.*, 2013 WL 12251411, at *4 (N.D. Ga. Aug. 5, 2013) (posting was "unnecessary, burdensome, and ineffective."); *Belloso v. Asplundh Tree Expert, Co.*, 2018 WL 4760822, at *6 (M.D. Fla. July 18, 2018), *report and rec. adopted as modified*, 2018 WL 4760671 (M.D. Fla. Aug. 24, 2018). <u>Third</u>, Plaintiff offers no explanation for requiring **text notification** in addition to mail and email, which could even cause potential plaintiffs to incur additional charges.  *See Kraft v. Freight Handlers, Inc.*, 2019 WL 3854989, at *6 (M.D. Fla. May 21, 2019), *report and rec. adopted in part,* 2019 WL 3451479 (M.D. Fla. July 31, 2019) (because the plaintiff did "not provide any reason why using both mail and email will not be effective in reaching the potential class members," the plaintiff should not be permitted to send additional notice via text message, post notice on defendant's premises, or send a reminder notice); *Johnsey v. BAL TK, LLC*, 2019 WL 3997072, at *5 (N.D. Ala. Aug. 23, 2019); *Dozier v. DBI Servs., LLC.*, 2020 WL 881698, at *4 (M.D. Fla. Feb. 24, 2020) ("unnecessary to permit Plaintiff to send Notices . . . via text message"); *Kiley v. MedFirst Consulting Healthcare Staffing, LLC,* 297 F. Supp. 3d at 1268 (declining text notices because they "could be incomplete and might not convey the seriousness of the communication").  Further, given the independence of the restaurants, the same notice should not be sent to each.

<u>**CONCLUSION**</u>

Plaintiff's motion satisfied neither the requirements for class certification under Rule 23 nor conditional certification under the FLSA and should be denied.

Dated:  June 12, 2020

/s/ *Mary Ruth Houston*
Mary Ruth Houston, Esq.
Florida Bar No.: 834440
E-mail: mhouston@shutts.com
Secondary E-mail: mljohnson@shutts.com
Paul J. Scheck, Esq.
Florida Bar No.: 028487
E-mail: pscheck@shutts.com
Secondary E-mail: mljohnson@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Ave., Suite 1000
Orlando, FL 32801
Telephone: (407) 423-3200
Facsimile: (407) 425-8316

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2020, the foregoing was electronically filed with the Clerk of the Court using the Florida Court E-filing Portal system, which will automatically send notification of such filing to attorneys of record listed below:

CARLOS V. LEACH, ESQ.
Florida Bar No.: 0540021
Email: cleach@theleachfirm.com
THE LEACH FIRM, P.A.
1950 Lee Rd., Suite 213
Winter Park, FL 32789

RICHARD CELLER, ESQ.
Florida Bar No.: 0173370
Email: richard@floridaovertimelawyer.com
CELLER LEGAL, P.A.
10368 W. SR 84, Suite 103
Davie, Florida  33314
*Attorneys for Plaintiff*

*Mary Ruth Houston, Esq.*
MARY RUTH HOUSTON, ESQ.

ORLDOCS 17749642 8

26