# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRUNO BALASSIANO,**

   **Plaintiff,**

v.                                                  Case No: 6:19-cv-2140-WWB-EJK

**FOGO DE CHAO
CHURRASCARIA (ORLANDO)
LLC, FOGO DE CHAO
CHURRASCARIA
(JACKSONVILLE) LLC and FOGO
DE CHAO CHURRASCARIA
(MIAMI) LLC,**

   **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Motion for Approval of the Settlement Agreement (the "Motion"), filed June 10, 2021. (Doc. 60.) For the reasons set forth below, I respectfully recommend that the Motion be granted.

## I.    BACKGROUND

The factual allegations underlying the instant case stem from the employment of Plaintiff at Fogo De Chao restaurant locations throughout Florida. Plaintiff allegedly "serve[d] food and drinks" at Fogo De Chao. (Second Am. Compl., Doc. 1-1 ¶¶ 6–8, 45.) During the course of his employment, Plaintiff was required to participate in a tip pool and, consequently, paid at a rate of the minimum wage minus a tip credit deduction (hereinafter, "tip credit wage"). (Id. ¶¶ 47, 51.) Plaintiff alleges

that Defendants were not eligible to take a tip credit deduction because the tip pool was invalidated by its inclusion of certain "gauchos" and Customer Service Representatives ("CSRs") who customarily did not receive tips. (*Id.* ¶ 51.) Some gauchos would occasionally spend the bulk of their shift preparing and seasoning meats instead of serving the meats to customers (hereinafter, "kitchen gauchos"). (*Id.* ¶¶ 52–56.) Further, the CSRs allegedly held a "management" role and supervised the servers and gauchos instead of holding a traditionally tipped role. (*Id.* ¶¶ 57–68.) The kitchen gauchos were paid tip credit wage, while the CSRs were compensated at about $12 per hour. (*Id.* ¶¶ 53, 57.) By taking a tip credit on the Class Members, Plaintiffs allege that Defendants violated Article X, Section 24 of Florida's Constitution and the minimum wage provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206. (*Id.* at ¶¶ 99–109.)

This action originated from the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, and was removed to this Court on November 5, 2019. (Doc. 1.) The Court entered an FLSA Scheduling Order, which directed Plaintiff to answer the Court's interrogatories and all parties to enter into settlement negotiations. (Doc. 16.) Plaintiff then filed the Consents to Joint Collective Action of Lucas Ribeiro Bossa, Gustavo Oliveira, Marcelino Medeiros, Fernando Costa, Paulo Rodrigues, Alexandre Lala Santos, and Pedro Afonso (collectively the "Opt-In Plaintiffs"). (Doc. 18.) Half a year of settlement negotiations proved unsuccessful (see Joint Settlement Report, Doc. 33); therefore, the parties filed their Case Management Report (Doc. 32). On May 15, 2020, Plaintiff moved to certify a class as to Count I, for violations of the

Florida minimum wage provision, and to obtain a conditional certification as to the FLSA count (Count II) (the "Motion for Class Certification"). (Doc. 37.) I recommended that the Court deny the Motion for Class Certification and to dismiss the Opt-In Plaintiffs. (Doc. 52 at 14.) The Court adopted the undersigned's report and recommendation and dismissed the Opt-In Plaintiffs. (Doc. 53.)

The parties negotiated a compromise of Plaintiff's claims and filed a motion for approval of their settlement agreement (the "Agreement") (Doc. 60-1) on June 10, 2021, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 60.) On June 22, 2021, the Court directed counsel to inform the court "whether or not the parties have entered into any agreement . . . . that has not been disclosed to the Court." (Doc. 61.) The parties indicated that they have not. (Doc. 62.) Thus, the Motion and the Agreement is ripe for review.

## II.    LEGAL STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated

damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores, Inc. v. United States ex. rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).

## III.    DISCUSSION

### A. Settlement Sum

According to the Agreement, Defendant has agreed to pay Plaintiff $17,000: $8,500 for Plaintiff's unpaid wage claims, and $8,500 in liquidated damages. (Doc. 60-1 ¶ 4(a)–(b).) Plaintiff initially sought $13,279.88 in wage compensation. (Doc. 26 at 1.) Because Plaintiff will receive less than the amount to which he claimed he was entitled under the FLSA, he has compromised his claim within the meaning of *Lynn's Food*, 679 F.2d at 1354–55.

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."). On review, I find the $17,000 Plaintiff has agreed to accept in satisfaction of his claim to be fair and reasonable in comparison to his original claim, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. I also find this amount fair in relation to the nature of the dispute between the parties contesting Plaintiff's entitlement to a salary of at least the Federal minimum wage. Thus, I find that the settlement sum represents a fair resolution of a bona fide dispute between the parties and that Plaintiff has not unfairly compromised his claim.

## B.  Attorney's Fees

Plaintiff's attorney will receive a total of $32,000.00 for fees and costs. (Docs. 60-1 ¶ 4(c); 58-1 ¶ 2.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Plaintiff, and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 60-1 ¶ 4(c)); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

## C. Release

The parties' Agreement contains the following release provision:

> In consideration of the promises herein, Balassiano hereby releases, acquits, forever discharges, holds harmless, and covenants not to sue [Defendants], and its corporate parents, subsidiaries, affiliates[,] and related entitles, all predecessors, successors[,] and assigns of each of the foregoing, and all past and present representatives, insurers, agents, officers, directors, trustees, stockholders, members, and employees of [Defendants], and all other entities referenced in this paragraph . . . from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, arising out of or under the overtime, minimum wage, or unpaid wage provisions of the FLSA, Florida law, or the Florida Constitution and statutes.

(the "Release") (Doc. 60-1 ¶ 5.) General releases in FLSA cases are frequently viewed

as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Judges in this District have found similar releases to the one proposed here to pass judicial scrutiny because they do not require Plaintiff to release unknown claims that are unrelated to his wage claim in the present case. *Lanier v. Exec. Garden Titusville Hotel*, LLC, No. 6:18-cv-927-Orl-40KRS, 2018 U.S. Dist. LEXIS 170056, at *1–2 (M.D. Fla. Oct. 2, 2018), *report and recommendation adopted as modified*, 2018 U.S. Dist. LEXIS 171066, at *11 (M.D. Fla. Sept. 17, 2018); *Martinez v. Garda CL Se., Inc.*, No. 6:15-cv-54-Orl-40KRS, 2016 U.S. Dist. LEXIS 197037, at *3 (M.D. Fla. Jan. 5, 2016); *Cooper v. Garda CL Se., Inc.*, No. 6:15-cv-1677-ORL-40KRS, 2015 U.S. Dist. LEXIS 169481, at *3 (M.D. Fla. Dec. 18, 2015). Thus, I find the release here to be sufficiently narrowly tailored to pass judicial scrutiny.

## IV.    RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice (Doc. 60);

2. **FIND** that the parties' Agreement (Doc. 60-1) is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

3. **DISMISS** the case with prejudice; and

4. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on July 2, 2021.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties